UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ANTHONY RUSSO, and BARBARA RUSSO,

                     Plaintiffs,

          v.                                             1:04-CV-1179

JIL INDUSTRIES, also known as SUNSETTER
PRODUCTS, LTD.,

                     Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                       OF COUNSEL:

OFFICE OF MICHAEL FLYNN, P.C.         MICHAEL FLYNN, ESQ.
Attorneys for Plaintiffs                           MARC T. WIETZKE, ESQ.
1205 Franklin Avenue
Suite 250
Garden City, New York 11530

GOLDBERG SEGALLA L.L.P.               LATHA RAGHAVAN, ESQ.
Attorneys for Defendant                       GARY J. O'DONNELL, ESQ.
8 Southwoods Boulevard
Suite 300
Albany, New York 12211-2526

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

## **I. INTRODUCTION**

       Plaintiffs Anthony Russo ("Mr. Russo") and Barbara Russo ("Ms. Russo") (collectively "plaintiffs") bring this action against JIL Industries, also known as Sunsetter Products, Ltd. ("defendant" or "Sunsetter"), seeking damages for injuries allegedly caused by the collapse of an awning manufactured by Sunsetter. Mr. Russo asserts three products-

liability causes of action: (1) negligence in designing and manufacturing the allegedly defective awning; (2) breach of warranty in selling the allegedly defective awning; and (3) strict liability for designing and manufacturing the allegedly defective awning.[1]  Also, Ms. Russo asserts a cause of action for loss of consortium.

Sunsetter moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"), and to preclude the testimony of plaintiffs' expert witness, Dr. Jeffrey Ketchman, pursuant to Federal Rule of Evidence 702 ("FRE 702").  Plaintiffs oppose and cross-move to preclude the testimony of Sunsetter's expert witness, Dr. Stephen Derby, for failing to disclose his identity in compliance with the terms of the Uniform Pretrial Scheduling Order.  Oral argument was heard on June 23, 2006, in Albany, New York.  Decision was reserved.

## II. FACTS

In or about 1997, Ms. Russo saw an advertisement for a Sunsetter awning in the Farmers' Almanac and, after much cajoling, convinced Mr. Russo to purchase the twenty-foot version of the awning.  Shortly after placing the order via telephone, the awning parts, along with written installation instructions and an instructional videotape, were delivered to plaintiffs' home.  Mr. Russo, along with his brother and a friend, read the written instructions and watched the videotape before installing the awning over the deck in the back of plaintiffs' home.  The installation took approximately three hours.

Despite the seemingly simple and successful installation process, plaintiffs soon began experiencing difficulties with the awning.  Within about a year of installation, a slider

---

[1] Despite indications to the contrary in the complaint, plaintiffs have in their memorandum and at oral argument made clear that they do not assert any products-liability claims based on a "failure to warn" theory.

wing on the left (facing the house) rafter broke, causing the rafter to contort.  Plaintiffs claim that Sunsetter promptly sent them a replacement rafter and leg assembly which Mr. Russo then installed.[2]  In or about 1999, Mr. Russo failed to retract or tilt the awning before a rain storm due to his preoccupation with a family emergency.  As a result, the fabric cover filled with rain water and the slider wing on the left rafter broke again.  The instructions that came with the awning, which Mr. Russo read, warn that failure to retract or tilt the awning before rain could result in damage to the awning.  Sunsetter promptly sent another replacement rafter and leg assembly which Mr. Russo installed.  In or about early summer 1999, part of the right rafter and/or leg broke causing part of the right rafter and/or leg to fall to the deck.[3]  To prevent the awning from completely collapsing, Mr. Russo lashed the right rafter to a nearby wooden post with a nylon rope.  Sunsetter sent another replacement rafter and leg assembly which Mr. Russo installed.[4]  In or about summer 2000, the right rafter/leg broke again and Mr. Russo replaced it.  Up until this point, neither plaintiff, nor anyone else, was injured as a result of problems with the awning.

In late August 2001, Mr. Russo was on his deck watering plants when the entire left side of the awning collapsed and landed on him.  He sustained injuries to his head, neck, shoulder, and arm.  At some point thereafter, he lashed the awning to the deck rail with rope

---

[2] Sunsetter claims that it does not have any record of such transaction; however, since this is not conclusive proof that the transaction did not take place and the facts must be considered in a light most favorable to plaintiffs, it must be assumed for purposes of this motion that plaintiffs did receive the rafter and leg assembly from Sunsetter.

[3] The facts are unclear as the exact circumstances of this particular incident.

[4] See note 2 supra.

and bailing wire to prevent further collapse. However, on September 4, 2001, the right side of the awning collapsed on Mr. Russo causing additional injuries to his head, neck, and back.

In between the time of the second injury-causing collapse and the commencement of this litigation, the condition of the awning deteriorated significantly. In fall 2001, Mr. Russo's brother manipulated the collapsed awning in such a way that rain water gathered on it and caused various parts to bend. During winter 2001-02, at Mr. Russo's request, someone intentionally broke part of the awning that was obstructing the patio door. Parts of the collapsed awning sustained further damage as a result of substantial snowfall during this period. In summer 2002, at Mr. Russo's request, his brother and friends removed the entire collapsed and damaged awning from his deck. Plaintiffs' expert witness, Dr. Ketchman, did not examine the collapsed awning until July 2005, and defendant's expert witness, Dr. Derby, did not examine the collapsed awning until January 2006.

Plaintiffs originally filed this action in the Supreme Court of the State of New York, Ulster County, on August 4, 2004; however, defendant removed the action to the United States District Court for the Northern District of New York.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986); Silver v. City Univ. of New York, 947 F.2d 1021, 1022 (2d Cir. 1991). The court will not try issues of fact on a motion for summary judgment, rather it will determine "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided

that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002). Thus, in sum, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993).

### B. Defendant's FRE 702 Motion

Defendant moves to preclude the testimony of plaintiffs' expert witness, Dr. Ketchman, pursuant to FRE 702. Since Dr. Ketchman's proposed testimony, which is based on his August 2, 2005 report, is central to plaintiffs' case, its admissibility will be considered before reaching the merits of the case.

FRE 702, which governs the testimony of experts, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In this case, there is no dispute that Dr. Ketchman is qualified as an expert "by knowledge, skill, experience, training, or education" as required by FRE 702. Indeed plaintiffs have produced an impressive curriculum vitae which indicates that he is so qualified. Rather, defendant asserts that his proposed testimony is not reliable because he did not test or otherwise rely on sound scientific methodology in forming his theory that the defective slider wings caused the awning to collapse.

District courts are the "gatekeepers" of expert testimony. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S. Ct. 2786, 2798 (1993); Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002). If proposed testimony does not meet the reliability standards set forth in FRE 702, it must not be admitted at trial. See Amorgianos, 303 F.3d at 265. In Daubert, and more recently in Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167 (1999), the United States Supreme Court set forth a number of factors to be considered by district courts in assessing the reliability of expert testimony under FRE 702. One such factor is whether the expert witness's theory can be or has been tested, or is otherwise rooted in sound scientific methodology. See Daubert, 509 U.S. at 593, 113 S. Ct. at 2796; Amorgianos, 303 F.3d at 266. Neither this factor nor any of the other Daubert factors are exclusive or dispositive in determining the reliability of expert testimony, Daubert, 509 U.S. at 593-94; however, expert testimony based on

conclusions that are not derived from testing or otherwise rooted in scientific methodology are usually insufficient to meet the reliability standards of FRE 702.

In this case, as evidenced by his report, Dr. Ketchman arrived at the following conclusions: "Mr. Russo installed and used the subject awning in a reasonable manner, in generally close conformance with the Instructions . . . [and] [a]ny deviations would not contribute in any significant way to causing the failure of the sliders described"; "[t]he rafter sliders were defectively designed with insufficient strength, and their fractures were the proximate causes of Mr. Russo's accidents"; "[m]anufacturing defects of the castings of the subject sliders also contributed to their failures in use"; "[t]he manufacturer was aware of the large size of the awning, their largest, had supplied Deflappers to help control the fabric loading on the structure before the accidents, was aware of multiple failures of the slider's wings, and had forwarded multiple replacement sliders before either accident, yet failed to furnish redesigned, non-defective sliders"; and "[t]he manufacturer was further negligent for not warning Mr. Russo against using the awning until redesigned replacement sliders were supplied – or for not substituting twin 10-foot awnings that would have dramatically reduced the dynamic and static loading on the sliders that were provided." Pls.' Cross Mot. Ex. C. at 5-6. In the report, Dr. Ketchman states that these conclusions are based on his "understanding of the accident circumstances, the use history of the awning, [and his] inspection of the installation and the awning parts." Id. at 5.

There are several problems with Dr. Ketchman's proposed testimony. First, and most importantly, he did not reconstruct the accident or conduct any testing on particular

- 7 -

awning parts,[5] yet somehow he arrives at the conclusion that "[t]he rafter sliders were defectively designed with insufficient strength, and their fractures were the proximate causes of Mr. Russo's accidents" and "[m]anufacturing defects of the castings of the subject sliders also contributed to their failures in use." Id. at 5.  While Dr. Ketchman appears to be well-qualified in the field of mechanical engineering, his conclusions are based largely on his mere observation of the awning.  This does not amount to reliable scientific methodology in this particular case.  Moreover, that he was able to reach reliable conclusions based largely on his observations is further called into doubt by the fact that at the time of inspection the awning was in a severely deteriorated condition.  The awning sustained "additional" and "separate" damage, which, according to Dr. Ketchman, occurred "after the accident, due to handling and storm activity." Id. at 3 (emphasis in original).  Presumably, Dr. Ketchman arrived at this conclusion after speaking with Mr. Russo; however, it is unclear as to how he was able to differentiate between the damage that occurred during and as a direct result of the collapse of the awning versus that which occurred after and was unrelated to the collapse of the awning.  His observation that there were "gross voids and porosity in the casting of the wing," id. at 4, without testing or other evidence to show that this caused the awning to collapse, is inadmissible under the reliability requirements of FRE 702 and Daubert.

Second, many of Dr. Ketchman's conclusions appear to be based not on personal knowledge, but rather on information relayed to him by Mr. Russo, a litigant in this action. Other than what was apparent from his observations, he could not have had personal knowledge of the circumstances surrounding Mr. Russo's installation and maintenance of the

---

[5] Under these circumstances, testing on an exemplar awning could have been performed. It was not done.

awning or any subsequent failures or collapses.  Thus, while he properly solicited information from Mr. Russo in conducting his investigation of the accident, such information, unless supported by independent and reliable scientific methodologies, is also inadmissible under the reliability requirements of FRE 702 and Daubert.

Finally, Dr. Ketchman's report must be ignored insomuch as it consists of legal conclusions.  He is a mechanical engineer and asserts that the fractured slider wings were the "proximate cause" of plaintiffs' injuries, that defendant defectively designed and manufactured the slider wings, and that defendant was "negligent" in failing to warn plaintiffs not to use the awning until newly redesigned parts were supplied.  Id. at 5-6.  Since his testimony is only useful to the trier of fact to the extent that it provides factual conclusions based on sound scientific methodology, his conclusory assertions are inadmissible as well.

Therefore, defendant's motion to preclude Dr. Ketchman's testimony pursuant to FRE 702 will be granted.  Because his testimony is central to plaintiffs' causes of action, the complaint will be dismissed in its entirety.

### C. Plaintiffs' Cross-Motion

Plaintiffs cross-move to preclude the testimony of defendant's expert witness, Dr. Derby, on the ground that defendant failed to timely disclose the identity of the witness in compliance with the terms of the Uniform Pretrial Scheduling Order.  This issue has been rendered moot as defendant's motion to preclude the testimony of plaintiffs' expert witness, Dr. Ketchman, will be granted.

### D. Products-Liability Claims

Defendant also moves for summary judgment on plaintiffs' products-liability claims pursuant to Rule 56.  While this issue has been rendered moot in light of the inadmissibility

of Dr. Ketchman's testimony, defendant asserts two arguments that would pose serious problems for plaintiffs' case even if Dr. Ketchman's testimony was not precluded: (1) Mr. Russo materially altered and otherwise failed to adequately maintain the awning after it left defendant's possession but before it collapsed; and (2) Mr. Russo intentionally or negligently caused the alteration, loss, or destruction – or spoliation – of the awning after it collapsed but before the commencement of this litigation.

A manufacturer can be held liable under any of plaintiffs' three alternative products-liability theories – negligence, breach of warranty, and strict liability – only if the plaintiff can show that the product in question was defective when it left the manufacturer's possession. See Liriano v. Hobart Corp., 132 F.3d 124, 126 (2d Cir. 1998); Robinson v. Reed-Prentice Div. of Package Mach. Co., 49 N.Y.2d 471, 475 (1980). In other words, substantial modification or material alteration of a product by the plaintiff or a third party generally prevents the plaintiff from establishing a causal connection between an alleged defect in that product and injuries allegedly caused by that product.

In this case, plaintiffs' claim that defective slider wings caused the awning to collapse and injure Mr. Russo. However, Mr. Russo failed to retract or tilt the awning before a storm causing damage to the awning, replaced parts of the awning on numerous occasions, and twice lashed the awning to his deck for support. The issue of whether these actions constitute modifications or alterations sufficient to break the causal link between the alleged defect and plaintiffs' injuries need not be decided. However, in light of these actions, the existence of a direct causal link is by no means clear.

Moreover, the awning was severely damaged after it collapsed but before either party's expert could examine it. The issue of whether plaintiffs are responsible for the

spoliation – "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation," West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) – of the awning need not be decided.  However, the fact that the awning, the central piece of evidence in this case, sustained significant damage while in plaintiffs' possession, indicates that some sanction might have been warranted in this case.  And given the central role of the awning in relation to plaintiffs' case, dismissal of the action may have been an appropriate sanction.

## IV. CONCLUSION

For the reasons discussed above, the testimony of plaintiff's expert witness, Dr. Ketchman, is unreliable under the standards set forth in FRE 702 and Daubert, and therefore will be precluded.  Since his testimony is central to plaintiffs' case, plaintiffs' causes of action against defendant are no longer viable and will be dismissed.

Therefore, it is

ORDERED that

1. Defendant's motion to preclude the testimony of plaintiffs' expert witness, Dr. Jeffrey Ketchman, is GRANTED; and

2. The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: November 20, 2006
       Utica, New York.